## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MADURA A. MARTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No. 12-0650 (ABJ)** |
| | ) | |
| **PIEDMONT AIRLINES** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Plaintiff, proceeding *pro se*, sues Piedmont Airlines, Station Manager Fred Louden, Human Resources Manager Michelle Foose, and Director of Stations Bob Berg for "discrimination, harassment, civil rights, negligence, retaliation, and violation of [National Labor Relations Act] policies governing protections concerning employees active in union activities." Compl. at 1.   He seeks $4.8 million in damages.   *Id.*

Pending before the court is defendants' motion to dismiss the complaint against the individual defendants under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and against Piedmont Airlines, Inc. ("hereafter Piedmont") under Rule 12(b)(6) as time-barred and for failure to state a claim upon which relief can be granted.   Defs.' Mot. to Dismiss Compl. [Dkt. # 4].   Upon consideration of the motion, plaintiff's opposition, and defendants' reply, the court finds that the complaint is time-barred and that plaintiff has stated no facts to support equitable tolling.   Hence, the court will grant defendants' motion.

**BACKGROUND**

In a factually sparse and rather unorganized complaint, plaintiff alleges generally that he was "singled out and disciplined more than [his] co-workers" because of his union activities. Compl. at 2.   Under his claims labeled Discrimination, *id*., and Retaliation, *id*. at 3, plaintiff alleges that he was written up four times in three months, which was more than anyone else, *id*. at 2, and that Piedmont "has systematically caused [him] undo hardship . . . by issuing unwarranted writeups so they could accumulate enough documentation to justify [his] termination," *id*. at 3. Plaintiff also alleges in his Retaliation count that he was "forced to sign a document under duress in order to continue[] working with this company.   This document was generated as a result of the writeups on false allegations."   *Id*. at 3.   Plaintiff further claims in his Discrimination count that Piedmont's management was "negligent" and breached company policy by not responding in "a timely and adequate manner" to his complaints about a supervisor, as it did when the supervisor complained about "a non-management employee."   *Id*. at 2.

Under his claims labeled Harassment, *id*. at 2, and Negligence, *id*. at 3, plaintiff alleges that "[h]arassment was carried out by creating a stressful and hostile work environment," apparently through "actions taken in 2011 in response to [his] active participation in union activities."   *Id*. at 2.   Plaintiff also alleges that Piedmont "never addressed" a harassment complaint he filed with the "DCA station in January 2010" in accordance with a zero tolerance policy.   *Id*. at 2, 3.

Under his claim labeled Civil Rights, *id*. at 3, plaintiff states that he was "deprived of [his] right to actively participate in the collective bargaining process with no fear of reprisals or threats." He also claims that he "was denied the right to work in a non-hostile work environment."   *Id*.

According to information alluded to in the complaint but supplied by Piedmont, plaintiff was employed as a ramp agent and was a member of the Communication Workers of America,

which was the union certified on November 4, 2010, to represent Piedmont's customer service agents.   Defs.' Mem., Decl. of Michelle Foose ¶ 5.   Piedmont claims that plaintiff was terminated from his job on August 11, 2011, *id* ¶ 6; plaintiff states that he was terminated "[a]fter attending a hearing on September 16, 2011, following the protocol set up by Piedmont Airlines." Pl.'s Response to Order Granting Defs. Mot. to Dismiss ("Pl.'s Opp'n") [Dkt. # 8] at 1.

The docket of this case reflects that the Clerk of Court received plaintiff's complaint and motion to proceed *in forma pauperis* on April 4, 2012, and formally filed this action on April 25, 2012, following the granting of plaintiff's *in forma pauperis* motion on April 21, 2012.   *See* Application to Proceed in District Court Without Prepaying Fees or Costs [Dkt. # 2].

## DISCUSSION

### A.   Legal Standard

Since the court is relying on matters beyond the pleadings, defendants' motion to dismiss under Rule 12(b)(6) must be treated as one for summary judgment.   Fed. R. Civ. P. 12(d).   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).

### B.   Statute of Limitations

Piedmont asserts that this action is barred by the statute of limitations governing claims under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188.   One of the RLA's five general purposes is "to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization[.]"   45 U.S.C. § 151a.   The court therefore agrees that plaintiff's claims predicated on anti-union animus fall under the RLA, which covers airlines.   *Id*., § 181.

"The statute of limitations for the RLA, borrowed from section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), is six months." *Atlas Air, Inc. v. Air Line Pilots Ass'n*, 232 F.3d 218, 226 (D.C. Cir. 2000) (citing *West v. Conrail*, 481 U.S. 35 (1987)). As a general rule applicable here, an action accrues at the time an injury occurs or when the facts are such that an injury is reasonably determinable. *Id.*; *Redding v. District of Columbia*, 828 F. Supp. 2d 272, 284 (D.D.C. 2011). The parties disagree as to whether plaintiff was fired on August 11, 2011, as defendants claim, or on September 16, 2011, as plaintiff claims. This disagreement is not material since plaintiff had at the latest until March 16, 2012, to file suit, thereby making his submission of this action on April 4, 2012, more than two weeks late.

### C.   Equitable Tolling

Plaintiff attributes his delay to his inability to obtain legal advice or "adequate information" from "the union's attorney . . . in a timely manner . . . .," or to retain legal counsel independent of the union. Pl.'s Opp'n at 1. To the extent that plaintiff is asserting a basis for equitable tolling, "[a] court should only exercise its equitable power to toll a statute of limitations 'in extraordinary and carefully circumscribed instances.' " *Redding*, 828 F. Supp. 2d at 282, n.12 (quoting *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988)). Plaintiff's excuse falls far short of satisfying this standard.

Plaintiff "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010) (citation and internal quotation marks omitted). Plaintiff states that he "was unable to get a response in a timely manner or adequate information to assist me from the union's attorney[,] so I sought legal aid from other sources which led to representing myself." Pl.'s Opp'n at 1. Plaintiff does not provide any

4

dates, or even a time period, for when he sought legal advice.   Nor does he claim that he was misled about pursuing his claim.   By his own statements in the complaint and attachments to his opposition, plaintiff was active in the union and diligently pursued grievances on behalf of himself and other employees during his employment.   It is reasonable to assume, then, that plaintiff had the wherewithal to obtain sufficient information to preserve his claim with or without the assistance of counsel, and "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect."   *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *cf. with Gladden v. Bolden*, 902 F. Supp. 2d 209, 214 (D.D.C. 2011) (*pro se* plaintiff "experienced" in litigating employment discrimination cases "had not carried [] burden" of stating facts to support equitable tolling).   Hence, the court finds that plaintiff is not entitled to equitable tolling of the RLA's statute of limitations.   *See Irwin*, 498 U.S. at 96 (noting that "[f]ederal courts have typically extended equitable relief only sparingly . . . [such as] in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period . . . ."); *Chung v. Dep't. of Justice*, 333 F.3d 273, 278 (D.C. Cir. 2003) (equitable tolling is available "when the plaintiff 'despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim.' " (quoting *Currier v. Radio Free Europe*, 159 F.3d 1363, 1367 (D.C. Cir. 1998)); *U.S. v. Lawson*, 608 F. Supp. 2d 58, 62 (D.D.C. 2009) (observing that "a failure to meet [a] statutory deadline due to *pro se* representation is not a circumstance in which it is appropriate to toll the statute of limitations.") (citation omitted); *see also Hunt v. Georgia Dep't. of Community Affairs*, No. 12-10935, 2012 WL 4074568, at *2 (11th Cir. Sept. 18, 2012) ("[W]e have previously rejected the contention that *pro se* status, ignorance of the judicial process or slow administrative proceedings warrant application of equitable tolling." (citing *Wakefield v. R.R. Ret. Bd.*, 131 F.3d 967, 969-70 (11th Cir. 1997)); *accord Nunes v.*

*Attorney General*, 475 Fed. Appx. 427, 429 (3rd Cir. 2012) ("A petitioner's *pro se* status and lack of knowledge generally do not warrant equitable tolling.") (citation omitted).

## CONCLUSION

For the foregoing reasons, the court finds that no material fact as to the untimeliness of this action is in genuine dispute and that defendants are entitled to judgment as a matter of law.   A separate order accompanies this Memorandum Opinion.

_____s/_____
AMY BERMAN JACKSON
United States District Judge

DATE:   January 7, 2013